# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DALE MANNING and
SHARON MANNING,

      Plaintiffs,

v.                                                                               No. CIV 17-1252 RB/GBW

PORTLAND ORTHOPAEDICS
LIMITED, *et al.*,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Symmetry Medical Inc.'s Rule 12(b)(2) Motion to Dismiss, filed on April 5, 2018. (Doc. 16.) Having considered the motion, briefs, and relevant law, the Court finds that the motion should be granted.

Plaintiff Dale Manning (Mr. Manning), a resident of New Mexico, received a total left hip replacement in 2009 at a medical facility in Arizona. The hip prosthesis, known as the M-COR Hip System, contained a component that had been shown to be susceptible to fatigue failures since at least 2008. Defendant Symmetry Medical Inc. (Symmetry) manufactured femoral neck components, which are a part of the M-COR Hip System (M-COR) prone to failure. Plaintiffs allege that Defendants, including Symmetry, had notice of multiple failures of M-COR devices and knew or should have known that these components were defective and unsafe for use at the time of Mr. Manning's hip replacement procedure. Symmetry, which is incorporated in Delaware with its principal place of business in Indiana, moves to dismiss for lack of personal jurisdiction.

I.   **Factual Background**

On December 2, 2009, Mr. Manning's treating surgeon implanted an M-COR into Mr. Manning's left hip. (Doc. 1 (Compl.) ¶¶ 21, 71.) While Mr. Manning was (and still is) a resident of New Mexico, he traveled to Arizona for the procedure. (*Id.* ¶¶ 3, 21, 71.) In late 2015, Mr. Manning was at home in New Mexico when the M-COR fractured and failed prematurely. (*Id.* ¶¶ 75, 78.) Mr. Manning had to have the M-COR replaced with a second hip prosthesis, and both Plaintiffs have suffered injuries and damages because of the M-COR's premature failure. (*Id.* ¶¶ 79–80, 161–66.)

Symmetry manufactured femoral neck components—part of the M-COR that allegedly failed.[1] (*See* Docs. 16 at 2; 18 at 1–2.) Symmetry made the "femoral neck components pursuant to detailed and modified written specifications provided by Portland Orthopaedics, Inc. (Portland)" (Doc. 16 at 2), which is a corporation that served "as the United States affiliate or subsidiary of" Portland Orthopaedics Limited (Portland Ltd.) (*see* Compl. ¶¶ 5, 6). Portland Ltd. and Portland manufacture and distribute the M-COR System and are also defendants in this lawsuit. (*See* Compl. ¶¶ 5, 6; *see also* Doc. 16 at 2–3.) Portland Ltd. is "a foreign corporation existing under the laws of Australia with its principal place[s] of business" in Australia and Minnesota (Compl. ¶ 5), and Portland is incorporated and has its principal place of business in Minnesota (*id.* ¶ 6). Symmetry shipped the femoral neck components to Portland Ltd.'s Australia facility. (Doc. 16 at 3.)

---

[1] Symmetry asserts that it "tracked . . . unique lot numbers and other identifying criteria" on all femoral neck components it made. (Doc. 16-1 ¶ 17.) According to Mr. Manning's medical records, the femoral neck component in his hip prosthesis came from Lot 2264. (*Id.* ¶ 18.) Symmetry avers that it investigated its records and determined that it did not manufacture any femoral neck components from Lot 2264. (*Id.* ¶ 19.) Symmetry contends, therefore, that it did not manufacture the femoral neck component that failed in Mr. Manning's hip prosthesis. (*Id.* ¶ 20; *see also* Doc. 16 at 3, 8.) Plaintiffs argue, however, that the "femoral neck at issue in this case was manufactured in July 2007[,] . . . within the timeframe that Symmetry was manufacturing femoral neck components for use in M[-]Cor devices." (Doc. 18 at 2 (citing Doc. 18-A ¶¶ 3–6).) The Court construes this disputed fact in Plaintiffs' favor.

Symmetry is a resident of Delaware (where it is incorporated) and Indiana (where it has its principal place of business). (Compl. ¶ 7.) Symmetry submitted the declaration of Mr. Steve Hinora, the Executive Vice President, Quality and Regulatory, for Tecomet, Inc., the company that acquired Symmetry in 2014. (*See* Doc. 16-1 ¶ 1.) Mr. Hinora has been employed by Symmetry and/or Tecomet, Inc. since 1988.[2] (*See id.* ¶ 3.) Mr. Hinora examined Symmetry's corporate records from 2001 to the present and attested that Symmetry has never: "been involved in the marketing, advertising, sale, or distribution of the [M-COR] System"; "designed, manufactured, marketed, or advertised its products in the State of New Mexico"; "solicited business from any customers or entities in New Mexico"; "sold or shipped its products to customers in New Mexico"; "received revenues from a New Mexico customer"; "offered services or other assistance regarding its products to customers in New Mexico"; "registered to do business" in New Mexico; "had a registered agent in the State of New Mexico"; nor "had a place of business, offices or other operations, employees in residence, bank accounts, or real property in the State of New Mexico." (*Id.* ¶¶ 4, 10–16.)

Plaintiffs submitted an image of Symmetry's website from 2007, which describes Symmetry as "a global market leader . . . [w]ith 20 strategically located facilities throughout the United States and Europe . . . ." (*See* Doc. 18-B.) Plaintiffs also submitted Symmetry's 2013 Form 10-K Annual Report, which indicates that Symmetry "conduct[ed] business with 'virtually every hospital in the [United States]'" and had "intentions of 'cross selling' products to its existing customers." (*See* Doc. 18-C at 3, 4.)

## II.  Legal Standard

"Motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(2) test a

---

[2] Symmetry was previously known as Othy but changed its name to Symmetry in 1996. (*See* Doc. 16-1 ¶ 3.)

plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. . . . When a defendant challenges the court's jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists." *Davis v. USA Nutra Labs*, No. CV 15-01107 MV/SCY, 2016 WL 9774945, at *3 (D.N.M. Dec. 21, 2016) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). "Plaintiff's burden is light in the early stages of litigation before discovery." *Arnold v. Grand Celebration Cruises, LLC*, No. CV 17-685 JAP/KK, 2017 WL 3534996, at *3 (D.N.M. Aug. 16, 2017) (citing *Wenz*, 55 F.3d at 1505).

"[W]here there is no evidentiary hearing and the jurisdictional question is decided on the parties' affidavits and written materials, Plaintiff need only make a prima facie showing of personal jurisdiction." *Id.* (citing *Wenz*, 55 F.3d at 1505). "The plaintiff may make the required prima facie showing by coming forward with facts, via affidavit or other written materials, that would support jurisdiction over the defendant if true." *Davis*, 2016 WL 9774945, at *3 (citing *OMI Holdings v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). "The Court accepts as true all well-pleaded facts (that are plausible, non-conclusory, and non-speculative) alleged by Plaintiff unless Defendant controverts those facts by affidavit." *Arnold*, 2017 WL 3534996, at *3 (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011)). "The Court resolves factual disputes in the parties' affidavits in Plaintiff's favor." *Id.* (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).

**III.     Discussion**

"The Fourteenth Amendment's Due Process Clause requires that a defendant be subject to a court's personal jurisdiction before a judgment can be rendered against it." *Davis*, 2016 WL 9774945, at *3 (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 301 (1980)). "To obtain

personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Id.* (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995) (internal citation omitted)).

"In New Mexico, a federal court has personal jurisdiction over a nonresident defendant only to the extent that the state's long-arm statute permits." *Id.* (citing *Fid. & Cas. Co. v. Phila. Resins Corp.*, 766 F.2d 440, 442 (10th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986)). New Mexico's long-arm statute "'extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible,' such that jurisdiction is authorized by the long-arm statute only if it is permitted under the Due Process Clause." *Id.* (quoting *Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002) (internal citation omitted); citing *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)). "To satisfy Due Process requirements, the defendant must have (1) sufficient minimum contacts with the forum state (2) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *McManemy v. Roman Catholic Church of Diocese of Worcester*, 2 F. Supp. 3d 1188, 1198 (D.N.M. 2013) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted)).

### A. Plaintiffs have not shown that Symmetry has sufficient minimum contacts with New Mexico.

"A plaintiff satisfies the 'minimum contacts' standard by showing that the court may exercise either general or specific jurisdiction over the defendant." *Id.* at 1199 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

## 1. Plaintiffs have failed to establish that the Court may exercise general jurisdiction over Symmetry.

A court may exercise general jurisdiction over a nonresident defendant when the plaintiff demonstrates that the defendant's general business contacts with the forum state "are so 'continuous and systematic' as to render them essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co.*, 326 U.S. at 317); *see also Trujillo*, 465 F.3d at 1218 n.7. "The defendant's conduct and connection with the forum state must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Ellsworth v. Lea Reg'l Hosp., L.L.C.*, No. 12-CV-59 WJ/KBM, 2012 WL 13080112, at *1 (D.N.M. June 7, 2012) (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996) (internal quotations omitted)). General jurisdiction allows a court to exercise personal jurisdiction over a nonresident defendant, even if the cause of action "is unrelated to the defendant's contacts with the state." *See id.* (quoting *Trierweiler*, 90 F.3d at 1533) (internal citation omitted); *see also Helicopteros Nacionales de Colombia*, 466 U.S. at 414.

"In order for general jurisdiction to lie, a foreign corporation must have a substantial amount of contacts with the forum state." *Trierweiler*, 90 F.3d at 1533 (citation omitted). "For corporations, 'the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction.'" *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotation marks and citation omitted)). While Symmetry is neither incorporated in nor has its principal place of business in New Mexico, general jurisdiction is not limited to these two locations. To determine whether a defendant has the "continuous and systematic" contacts with a forum necessary to exercise general jurisdiction, courts consider the following factors:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to

solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir. 1996) (quoting *Trierweiler*, 90 F.3d at 1533 (internal citation omitted)).

With respect to the first and second factors, Symmetry submitted Mr. Hinora's declaration to establish that it has not "solicited business from any customers or entities in New Mexico[,]" "registered to do business" in New Mexico, "nor had a registered agent in the State of New Mexico." (Doc. 16-1 ¶¶ 12, 15.) With respect to the third factor, Mr. Hinora attested that Symmetry has neither "designed, manufactured, marketed, or advertised its products in the State of New Mexico" nor "had a place of business, offices or other operations, employees in residence, bank accounts, or real property in the State of New Mexico." (*Id.* ¶¶ 11, 12, 16.) And with respect to the fourth factor, Mr. Hinora attested that Symmetry has never "sold or shipped its products to customers in New Mexico and has never received revenues from a New Mexico customer." (*Id.* ¶ 13.)

Plaintiffs do not submit an affidavit, declaration, or other material that contradicts Mr. Hinora's declaration. (*See* Doc. 18.) Instead, Plaintiffs argue that Symmetry's 2013 Form 10-K Annual Report establishes sufficient contacts to establish general jurisdiction. (Doc. 18 at 7–8.) The Report indicates that Symmetry "conduct[ed] business with 'virtually every hospital in the [United States]'" and had "intentions of 'cross selling' products to its existing customers." (*Id.* at 8 (quoting Doc. 18-C at 3, 4).) Symmetry counters that these sentences in its Report are both aspirational and insufficient to meet Plaintiffs' burden. (Doc. 22 at 3.) The Court agrees. The 2013 Report does not controvert the facts Mr. Hinora attested to in his declaration. Based on the

7

uncontroverted facts, Plaintiffs have failed to establish a prima facie showing of general personal jurisdiction over Symmetry.

### 2. Plaintiffs have failed to establish that the Court may exercise specific jurisdiction over Symmetry.

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (quotation marks and citation omitted). "To establish specific jurisdiction, the plaintiff must show that the defendant 'purposefully directed' [its] activities at residents of the forum, and that the plaintiff's injuries 'arise out of or relate to' those activities." *McManemy*, 2 F. Supp. 3d at 1199 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations omitted)). "A defendant 'purposefully directs' activities in a forum where the defendant makes (a) an intentional action that was (b) expressly aimed at the forum state (c) with knowledge that the brunt of the injury would be felt in the forum." *Id.* (citing *Shrader*, 633 F.3d at 1239–40). "This ensures that an out-of-state defendant is not bound to appear in the forum to account for merely 'random, fortuitous, or attenuated contacts' with the forum." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475 (alterations in original, internal citations omitted)).

It must be defendant's own actions that create a "substantial connection with the forum." *Davis*, 2016 WL 9774945, at *4 (citing *OMI Holdings*, 149 F.3d at 1090–91 ("the injury must arise out of 'actions by the defendant *himself* that create a substantial connection with the forum state'") (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 109 (1987) (internal quotations omitted))). "Binding Tenth Circuit precedent provides that 'mere foreseeability' is not enough to establish the purposeful availment requirement for personal jurisdiction . . . ." *Id.* (quoting *Dudnikov*, 514 F.3d at 1077); *see also OMI Holdings*, 149 F.3d at 1094 (noting that the

Supreme Court "has cautioned that foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause") (quoting *World-Wide Volkswagen*, 444 U.S. at 295) (internal quotation marks omitted). Instead, "a plaintiff 'must establish . . . not only that defendant[] foresaw (or knew) that the effects of [its] conduct would be felt in the forum state, but also that defendant[] undertook *intentional actions that were expressly aimed at that forum state*.'" *Id.* (quoting *Dudnikov*, 514 F.3d at 1077) (subsequent citation omitted).

Plaintiffs do not point to any intentional action Symmetry took that was aimed at New Mexico. (*See* Doc. 18.) Instead, Plaintiffs argue that specific jurisdiction is appropriate under New Mexico's "stream of commerce" standard and urge the Court to follow the New Mexico Court of Appeals' reasoning in *Sproul v. Rob & Charlies, Inc.*, 304 P.3d 18 (N.M. Ct. App. 2012). (*See* Doc. 18 at 8–12.) Under Plaintiffs' reading of *Sproul*, New Mexico courts do not require that a defendant *purposefully directs* its actions toward the forum state, but instead will exercise specific jurisdiction where "the defendant place[s its] product into the stream of commerce with the *expectation* that it will be purchased by users in the forum state." (*Id.* at 9 (quoting *Sproul*, 304 P.3d at 28–29) (internal citation omitted).) *But see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (holding that conduct must be purposefully directed at a forum state in order to support specific personal jurisdiction there). The Court declines to comment on whether *Sproul* diverges from binding federal precedent. At any rate, this Court is not bound by *Sproul*, but must follow Supreme Court and Tenth Circuit precedent to determine "whether minimum contacts exist to satisfy due process under the federal constitution . . . ." *Davis*, 2016 WL 9774945, at *4 (quoting *Raffile v. Exec. Aircraft Maint.*, 831 F. Supp. 2d 1261, 1270 (D.N.M. 2011)). Moreover, "New Mexico's long-arm statute only confers personal jurisdiction to the extent permitted under the Due Process Clause." *Id.* (citing *Tercero*, 48 P.3d at 54; *Trujillo*, 465 F.3d at 54). Even New Mexico's

9

"stream-of-commerce [standard] cannot supersede either the mandate of the Due Process Clause or the limits on judicial authority that Clause ensures." *See J. McIntyre*, 564 U.S. at 886.

The United States Supreme Court held in *J. McIntyre Machinery* "that a New Jersey court did not have specific personal jurisdiction over a foreign manufacturer that did not engage in conduct purposefully directed at New Jersey." *See Davis*, 2016 WL 9774945, at *4 (discussing *J. McIntyre Machinery*, 564 U.S. at 877). The plaintiff there injured his hand in a machine in New Jersey and sued the machine's foreign manufacturer, J. McIntyre. *J. McIntyre Machinery*, 564 U.S. at 878. J. McIntyre was incorporated in and manufactured the machines in England, but it sold the machines to a U.S. distributor and attended conventions to help advertise its "machines alongside the distributor" in various states, but not in New Jersey. *Id.* "[N]o more than four machines . . . ended up in New Jersey." *Id.* The Supreme "Court held that '[i]n products-liability cases like this one, it is the defendant's purposeful availment that makes jurisdiction consistent with traditional notions of fair play and substantial justice.'" *Davis*, 2016 WL 9774945, at *4 (quoting *J. McIntyre Machinery*, 564 U.S. at 880 (internal quotation marks and citation omitted)). "In particular, '[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.'" *Id.* (quoting *J. McIntyre Machinery*, 564 U.S. at 882).

Here, Mr. Hinora stated that Symmetry has "never been involved in the marketing, advertising, sale, or distribution of the [M-COR] System." (Doc. 16-1 ¶ 10.) Rather, Symmetry manufactured the femoral neck components and then shipped them to Portland Ltd. at its facility in Australia. (*Id.* ¶ 9.) Plaintiffs make no allegations in either their Complaint or in their responsive brief to rebut Mr. Hinora's declaration or to create a prima facie showing that Symmetry

purposefully availed itself of the New Mexico market. Nor do Plaintiffs allege that Mr. Manning's injury arose out of Symmetry's actions that created a connection to New Mexico. Plaintiffs argue that Symmetry's action of placing the femoral neck components into the stream of commerce with the expectation that they would be sold in the United States is sufficient to invoke specific jurisdiction. (*See* Doc. 18 at 10–11.) Such an expectation, without more, is not enough. "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*." *Asahi*, 480 U.S. at 112 (quoting *Burger King*, 471 U.S. at 476; citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

Like the defendants in both *J. McIntyre* and *Davis*, there are no allegations and no evidence that Symmetry had control over its distributor. *See J. McIntyre*, 564 U.S. at 878; *Davis*, 2016 WL 9774945, at *5. Without this, the Court cannot find that Symmetry acted to purposefully avail itself of doing business in New Mexico. *See Davis*, 2016 WL 9774945, at *5. Consequently, the Court cannot exercise specific personal jurisdiction over Symmetry "purely on the basis that it put products into the stream of commerce with the intention that they be sold generally." *See id.* Plaintiffs have not made the necessary prima facie showing that Symmetry purposefully availed itself of the New Mexico market, or that Mr. Manning's injury arose from Symmetry's connection to New Mexico. Because Plaintiffs have not shown that Symmetry has minimum contacts with New Mexico, the Court will not examine whether exercising personal jurisdiction will "offend 'traditional notions of fair play and substantial justice.'" *McManemy*, 2 F. Supp. 3d at 1198 (quotation omitted). The Court will grant Symmetry's motion to dismiss.

**B.      The Court denies Plaintiffs' request for jurisdictional discovery.**

Plaintiffs alternatively seek "jurisdictional discovery relating to Symmetry's contacts with

New Mexico." (Doc. 18 at 1, 8, 13.) Granting a request for jurisdictional discovery is within this Court's broad discretion. *See Quimbey by Faure v. Cmty. Health Sys., Inc.*, No. CV 14-559 KG/KBM, 2015 WL 13651242, at *4 (D.N.M. Sept. 22, 2015); *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1299 (10th Cir. 2004). As the party seeking discovery, Plaintiffs must show "that jurisdictional discovery is necessary." *Quimbey*, 2015 WL 13651242, at *4 (citing *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1190 (10th Cir. 2010)). "A party must support his request for jurisdictional discovery by more than a mere 'hunch that it might yield jurisdictionally relevant facts.'" *Id.* (quoting *Breakthrough Mgmt. Grp.*, 629 F.3d at 1190) (internal citation omitted)). An unsupported request for discovery is not enough, as "discovery is meant to 'allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" *Id.* (quoting *McManemy*, 2 F. Supp. 3d at 1195) (internal quotation omitted). "[A] court abuses its discretion to deny a jurisdictional discovery request only if the denial prejudices a litigant." *Id.* (citing *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002)). "Prejudice occurs where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" *Id.* (quoting *Sizova*, 282 F.3d at 1326) (internal quotations omitted).

While Plaintiffs generally seek discovery on "the extent of Symmetry's contacts with New Mexico" (Doc. 16 at 8), Plaintiffs fail to controvert Mr. Hinora's declaration or come forward with any other jurisdictional facts to support their request. Thus, Plaintiff's unsupported "request for discovery demonstrates nothing more than an attempt to conduct a fishing expedition based on a hunch." *See Quimbey*, 2015 WL 13651242, at *4. Because Plaintiffs have not shown that any jurisdictional facts are controverted nor that discovery is necessary, the Court finds that denying Plaintiffs' request will not be prejudicial. *See id.* Accordingly, the Court will deny Plaintiffs'

jurisdictional discovery request. If Plaintiffs later discover facts that would support a basis for personal jurisdiction over Symmetry, they may move to re-add Symmetry as a defendant.

**THEREFORE**,

**IT IS ORDERED** that Defendant Symmetry Medical Inc.'s Rule 12(b)(2) Motion to Dismiss (Doc. 16) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' request for jurisdictional discovery is **DENIED**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE